Estate of CHARLES McLAUGHLIN, Deceased (No. 2).
[No. 3,061;   decided April 5, 1887.]

**Probate Court—Jurisdiction.**—The Superior Court, sitting in probate, cannot exercise other than purely probate jurisdiction; its jurisdiction, as succeeding the powers of the former probate court, is not enlarged.

**Revocation of Probate Because Obtained by Fraud.**—The superior court, sitting in probate, has no jurisdiction to revoke the probate of a will because procured by fraud or artifice; the remedy of the party aggrieved is by independent suit in equity.

Charles McLaughlin died in San Francisco, on December 13, 1883, leaving a will, bearing date February 8, 1866, with a codicil executed December 22, 1869.

The operative portions of the will and codicil made Kate D. McLaughlin, wife of the testator, his sole devisee, legatee and executrix.

The heirs of the decedent were his widow, above named; a brother, named Michael McLaughlin; a niece, named Mary Grace McLaughlin, and two sisters, named respectively Ellen J. Hogan and Arabella Hinkle.

On January 9, 1884, the will was filed, together with a petition for its probate and the appointment of Mrs. Kate D. McLaughlin as executrix. Within due time, the above-named heirs (with the exception of the widow, the petitioner) filed written grounds of opposition to the will and codicil, and to their probate, contesting the same.

Thereafter, and before the sixteenth day of June, 1884, the opposition on the part of said heirs, was withdrawn by them, and their contest dismissed; and on the last-named day the will and codicil were admitted to probate, and the petitioning widow appointed executrix.

On June 15, 1885, two of the heirs, Arabella Hinkle and Ellen J. Hogan filed a petition for the revocation of the probate.

On March 16, 1886, the executrix filed her answer thereto, and on September 18, 1886, the matter came on for hearing.

It was continued from time to time until October 6, 1886, when the executrix moved for judgment on the pleadings. This motion was met by a counter-motion on the part of the contesting heirs, for leave to file an amended petition. The latter motion was granted and the former denied, and on said day the amended petition was filed.

On October 26, 1886, the executrix filed her notice of motion to strike out certain portions of the amended petition, specified in the opinion of the court below. The motion was thereafter argued and submitted to the court, and granted on April 6, 1887.

The matter sought to be stricken out, and stricken out— was in substance to the following effect:

It was alleged that the contestants and the other heirs (excepting the widow) had filed their contest to the will and codicil, and to their probate, in due time, as hereinabove stated.

That the executrix filed her answer to the contest, and a trial by jury had been demanded, and the widow had been appointed special administratrix until the petition for probate should be determined.

That certain real estate, of the value of about $200,000, owned by the decedent, was, at the time of his death, held in secret trust by Tully R. Wise, his attorney and the attorney for the executrix; and that at said time certain personal property of the decedent, of the value of about $800,000, was held in trust by his widow, and that this personal property, as also all books of account, stocks, bonds, etc., of the decedent, passed into the possession of the widow at the time of decedent's death, and remained in her exclusive control until the filing of the inventory on May 11, 1885.

That the petition for probate alleged the value of the estate to be $1,000,000, while the widow knew it to be of far greater value; and that she has continuously and persistently concealed its true value from the contestants and the court, and that contestants have had no knowledge or means of knowledge as to its value, except such as the executrix furnished them.

That while the contest was pending, the executrix made overtures to contestants and set on foot negotiations to purchase and secure their rights and interests in the estate, as the heirs of deceased.

That while such negotiations were pending, and for the purpose of acquiring accurate information as to the value of the estate, so as to make a just and intelligible sale of their interests, contestants requested the executrix to furnish them with a statement in writing of the assets and liabilities of the estate.

That she furnished them a statement showing the value of the estate, over its liabilities, to be about $240,000, a copy of which is attached to the amended petition and made part thereof, marked Exhibit "A."

That the executrix represented this to be a true and correct exhibit of the actual condition of the estate, and that she further caused it to be represented to contestants that the estate is not large, and is involved in litigation, and that the litigation would consume nearly the whole estate, and in the end it would be worth little or nothing, and that $23,000 was the fair and reasonable value of the interest of each of the contestants as such heirs.

That the contestant, Ellen J. Hogan, at that time resided in Illinois and was never in California, and was sixty-three years of age; had no business experience, and was ignorant and illiterate, being unable to read or write, and that contestants were wholly unacquainted with the character or value or extent of the estate.

That they relied upon the information given them by the executrix, and so relying and supposing that she had made a full and perfect disclosure of the property of the estate, and had concealed nothing, and induced thereto by her statements and representations, contestants consented to sell the whole of their interest in the estate to the widow for $23,000 each, and to withdraw and dismiss their contests to the probate of the will and that without reliance upon such statements they would not have done so; and that accordingly they executed a conveyance of their interests and dismissed their contests.

That thereafter, the executrix returned her inventory, and procured the court, by some means, to appoint as two of the appraisers two persons who were in her employ.

That on the eleventh day of May, 1885, the inventory and appraisement was filed; that the estate was appraised at $2,476,162.72 by said appraisers.

That the newspapers of this city and county published the appraised value of the estate, and therefrom contestants for the first time learned that the estate was worth more than $2,000,000 over and above what the executrix had represented its value to be.

That upon examination of the inventory, contestants learned for the first time of the large and valuable portions of the estate held in trust by said Tully R. Wise and by said widow, and that said two appraisers were her employees.

That the inventory does not contain all the property of the estate, and the appraisement is far below its actual value, and that its real value is upward of $4,000,000.

The last paragraph sought to be stricken out concludes:

"By reason of the foregoing facts, it is manifest that the foregoing conveyances from these petitioners to Kate D. McLaughlin, wherein and whereby they conveyed to said Kate D. McLaughlin their interests in the estate of said Charles McLaughlin, were all procured by the fraud, imposition and deceit of said Kate D. McLaughlin, and that by reason thereof said conveyances are, as to these petitioners, in equity, null and void."

S. M. Wilson, L. D. McKisick, for motion.

D. M. Delmas, J. B. Mhoon and Flournoy & Mhoon, contra.

COFFEY, J. This is a motion to strike out certain portions of the amended petition of Arabella Hinkle and Ellen J. Hogan to revoke the probate of the will of Charles McLaughlin, deceased. The parts of the petition which it is proposed to strike out are all of paragraphs 6, 7, 8, 9, except lines 20 to 27 inclusive, on the seventh page of the petition, and all of paragraphs 10 and 11, also all of the paper

marked Exhibit "A," and annexed to said amended petition and made a part thereof.

If this motion should prevail, the petition will then contain allegations (1) of the time and place of the death of Charles McLaughlin; (2) of his residence at the time of his death; (3) the persons interested in his estate; (4) the value of the property left by him; (5) the filing of the paper purporting to be a will with codicil, and of a petition for the probate thereof, and for the appointmnet of the proponent as executrix; (6) the admission of said paper to probate, and the appointment of the proponent as executrix, her qualification as such executrix, and that she continues acting as such executrix; (7) allegations (paragraph 12 of amended petition) that said will so probated was not executed, attested and published as required by law; that it was not an olographic will, and was not subscribed at the end thereof by said McLaughlin in the presence of both the attesting witnesses thereto; that the signature of the said McLaughlin was not acknowledged to said witnesses to have been made by him or by his authority; that the attesting witnesses did not sign their names at the end of said paper at the request of said McLaughlin, or in his presence, or in the presence of each other, or at all; that said will is not the last will of said Charles McLaughlin; that said will was by him in his lifetime revoked; that said will was by said McLaughlin, in his lifetime, torn, canceled, obliterated and destroyed, with the intent and for the purpose of revoking the same; that said will was never published by said McLaughlin as his will; that said will so filed for probate on the 9th of January, 1884, is not the last will of said McLaughlin; but that he, many years subsequent to the date of said paper, to wit, on the 12th of October, 1878, made, executed and published another and different will, whereby the said McLaughlin revoked and annulled the said paper presented and filed on the 9th of January, 1884, by said Kate D. McLaughlin.

The grounds of the motion are that each of the first above enumerated portions of the amended petition are irrelevant and redundant within the meaning of section 453 of the Code of Civil Procedure of the state of California;

and on the further ground, that said portions of said amended petition are wholly immaterial and irrelevant to the proceedings provided for in sections 1327 and 1328 of the Code of Civil Procedure of this state, and contrary to the same, and are not matters of probate, or within the jurisdiction of this court sitting as a court of probate.

Section 1327, Code of Civil Procedure, reads: "When a will has been admitted to probate, any person interested may, at any time within one year after such probate, contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved a petition in writing containing his allegations against the validity of the will, or against the sufficiency of the proof, and praying that the probate may be revoked."

For the purpose of such application he need only put in issue (1) the competency of the decedent to make a last will and testament; (2) the freedom of the decedent at the time of the execution of the will from duress, menace, fraud or undue influence; (3) the due execution and attestation of the will by the decedent, or subscribing witnesses; (4) any other question substantially affecting the validity of the will.

This court sitting in probate may consider only the will and the sufficiency of the proofs upon its probate. It cannot exercise other than purely probate jurisdiction. If the judgment or order was obtained by the employment of frauds or artifices such as would justify a court of equity in annulling it, the remedy of the party aggrieved is by independent action in equity. The matter has passed beyond the jurisdiction of the superior court as a court of probate: Dean v. Superior Court, 63 Cal. 477.

The jurisdiction of the superior court, as succeeding to the powers of the probate court, is not enlarged. In such cases courts of equity have jurisdiction to afford proper relief; and, if it be true that the probate court was imposed upon, and induced to make a decree which it would not otherwise have done, resort must be had to a court of equity for relief: Estate of Hudson, 63 Cal. 454.

This is a statutory proceeding for a specific purpose; it has its scope and limitations, and can go no further. The

jurisdiction of the probate judge, relating to revocation of probate, is wholly statutory. In exercising the power, he can in no way alter or disregard the provisions of the statute: Pryer v. Clapp, 1 Dem. (N. Y.) 390.

It follows, therefore, that all the parts of the petition assailed by this motion should be struck out as not within the jurisdiction of this court sitting in probate. Motion granted.

---

*The Conclusiveness of the Probate of a Will,* when attacked on the ground of fraud, is a question that recently has been before the supreme court of California in Estate of Davis, 151 Cal. 318, 121 Am. St. Rep. 105, 86 Pac. 183, 90 Pac. 711; Tracy v. Muir, 151 Cal. 363, 121 Am. St. Rep. 117, 90 Pac. 832.

## RELIEF IN EQUITY FROM THE ORDERS AND DECREES OF PROBATE COURTS.

**The Power of Courts of Equity to Grant Relief** from the orders and decrees of probate courts, in case of fraud or other ground of equitable jurisdiction, has often been recognized, so that it may safely be affirmed that the orders and decrees of courts of probate may, as a rule, be relieved from by independent suits in equity under the same circumstances, to the same extent, and subject to the same limitations as relief may be had from other judicial determinations: Shegogg v. Perkins, 34 Ark. 117; Silva v. Santos, 138 Cal. 536, 94 Am. St. Rep. 45, 71 Pac. 703; Gafford v. Dickinson, 37 Kan. 287, 15 Pac. 175; Grady v. Hughes, 80 Mich. 184, 44 N. W. 1050; Searles v. Scott, 14 Smedes & M. 94; Foute v. McDonald, 27 Miss. 610; Froebrich v. Lane, 45 Or. 634, 106 Am. St. Rep. 634, 76 Pac. 351. Thus equity has jurisdiction to set aside orders in probate procured by the fraudulent suppression of the decedent's will: Ewing v. Lamphere, 147 Mich. 659, 118 Am. St. Rep. 563, 111 N. W. 187.

**Decrees Settling Accounts.**—The most familiar application of the rule just stated relates to orders and decrees settling the accounts of administrators, executors, and guardians, and of trustees performing analogous duties. These settlements, when once made and approved by courts of competent jurisdiction, have the force of res judicata both at law and in equity, and will not be vacated or annulled by courts of equity, except upon the establishment of some well-recognized ground for equitable relief: Alexander v. Alexander, 70 Ala. 357. The temptation to fraud is, however, not less in these cases than in others coming before courts, and the opportunity for exercising it is much greater than in litigation where all of the parties are generally well informed both respecting the facts of the controversy and the legal rights attending them, and furthermore, are rep-

resented by counsel attentive in safeguarding their interests. So, though there is no fraud, there may be accident or mistake such as authorize the granting of relief from other judicial determinations. "The courts of chancery have no power to take such cases out of probate courts, for the purpose of proceeding with the administration. But their powers and functions to relieve against fraud, accident, mistake, or impending irremediable mischief is universal, extending over suitors in all of the courts and over the decrees in those courts obtained by fraud, or rendered under circumstances which render it inequitable that they should be enforced. Hence, any fraud in the settlements of administrators or executors may be corrected": Reinhardt v. Gartrell, 33 Ark. 727; Shegogg v. Perkins, 34 Ark. 117; Jones v. Graham, 36 Ark. 383; Green v. Creighton, 10 Smedes & M. 159, 48 Am. Dec. 742; Oldham v. Trimble, 15 Mo. 225; Dingle v. Pollick, 49 Mo. App. 479; Froebrich v. Lane, 45 Or. 13, 106 Am. St. Rep. 634, 76 Pac. 351; Bertha Z. & M. Co. v. Vaughan, 88 Fed. 566. If trustees under a will, with intent to defraud the person benefited, present a false account and secure its settlement by the court, they are guilty of fraud upon the court extrinsic to the case, as well as upon the beneficiary, and if he has no knowledge of the fraud until after the expiration of the time for moving to vacate the order of settlement or for appealing therefrom, he may maintain a suit in equity to compel the trustees to pay the amount of which he has been defrauded by the settlement: Aldrich v. Barton, 138 Cal. 220, 94 Am. St. Rep. 43, 71 Pac. 169. The same principles apply to a decree settling the account of the guardian of an infant or incompetent person, who, through fraud or mistake has failed to account for the funds or assets of his ward: Nelson v. Cowling, 77 Ark. 351, 113 Am. St. Rep. 155, 91 S. W. 773; Willis v. Rice, 141 Ala. 168, 109 Am. St. Rep. 26, 37 South. 507; Silva v. Santos, 138 Cal. 536, 94 Am. St. Rep. 45, 71 Pac. 703; Anderson v. Anderson, 178 Ill. 160, 52 N. E. 1038; Neylans v. Burge, 14 Smedes & M. 201. This rule is not abrogated by statutes purporting to make decrees and orders of courts of probate conclusive. Such statutes merely place the determination of those courts on the same footing as the determinations of other judicial tribunals without interfering with the power of equity, in proper cases, to relieve from them: Black v. Whitall, 9 N. J. Eq. 572, 59 Am. Dec. 423.

In some of the states statutes have been enacted under which the authority of equity is clearly expressed and which remove any doubts that otherwise might exist upon this subject. Thus, in Iowa, a section of the code provides that mistakes in the final settlement of accounts may be corrected after the settlement "by equitable proceedings and showing such grounds as would justify the interference of the court": Tucker v. Stewart, 113 Iowa, 449, 86 N. W. 371. These statutes authorize relief to be granted against an order settling an account, and so does a statute authorizing judgments to be va-

cated for fraud practiced by the successful parties in obtaining them: Roll v. Stum, 20 Ky. Law Rep. 661, 46 S. W. 223. But these statutes are not essential to the jurisdiction of the court. Thus, where, as in California, in which state no special statute existed upon the subject and where its courts of probate were of exclusive jurisdiction, a bill was filed to compel an accounting for certain property, notwithstanding its omission from the accounts of an administrator, which had been settled by the court. The supreme court of the United States, reversing the judgment of the trial court, said: "It is well established that a settlement of an administrator's account, by the decree of a probate court, does not conclude as to property accidentally or fraudulently withheld from the account. If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the probate court might, in such cases, open its decrees and administer upon the property omitted. And a fraudulent concealment of property, or a fraudulent disposition of it, is a general and always existing ground for the interposition of equity": Griffith v. Godey, 113 U. S. 89, 5 Sup. Ct. 383, 28 L. Ed. 934.

Orders Directing the Sale of the Property of a decedent or incompetent, and confirming such sales when made, are, not less than those of other judicial tribunals, subject to attack in courts of equity, not, indeed, for the purpose of showing them to be erroneus or irregular, but of proving that they were obtained under such circumstances that relief ought to be granted against them to the extent of setting aside the sales, or requiring persons acquiring title under them to hold it as trustees, or to otherwise so act that equity shall not be offended: Van Horn v. Ford, 16 Iowa, 578; Grant v. Lloyd, 12 Smedes & M. 191; Hull v. Voorhis, 45 Mo. 555; Lander v. Abrahamson, 34 Neb. 553, 52 N. W. 571. Where suit was commenced by creditors of a decedent to set aside for fraud a sale of his property authorized and confirmed by a probate court of Louisiana, the supreme court of the United States said: "The administration of General Morgan's succession undoubtedly belonged to the probate court of the parish of Carroll, and, in a general sense, it is true that the decisions of that court in the matter of the succession are conclusive and binding, especially upon those who were parties. But this is not universally true. The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud, whether committed in pais or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors in proceedings in another court; but it

will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it'': Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 27 L. Ed. 547.

Decrees of Distribution.—In many of the states, courts whose orders and decrees we are here considering are authorized and required, after the settlement of the estate of a decedent, to make, a decree distributing the property remaining undisposed of among the heirs, devisees, and other parties entitled thereto, and the statutes conferring this authority impart conclusive effect to the action of the court, to the end that thereafter there shall be no question remaining respecting the persons entitled to such property. As in every other judicial proceeding, fraud may be employed, mistakes may occur, or accidents may prevent the due presentation of the claims of the persons entitled, and an adjudication may result which equity will not allow to be enforced. It may declare that the person in whose favor a decree of distribution is, or his successor in title with notice, holds the property in trust for an heir or other person to whom it should have been distributed (Baker v. O'Riordan, 65 Cal. 368, 4 Pac. 232; Sohler v. Sohler, 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282; Maney v. Casserly, 134 Mich. 252, 96 N. W. 478), or in some jurisdictions the decree of distribution may be set aside so far as inequitable: Benson v. Anderson, 10 Utah, 135, 37 Pac. 256; Beem v. Kimberly, 72 Wis. 343, 39 N. W. 542.

Orders Granting Probate of Wills and Letters of Administration.— There is no doubt that courts of equity have always disclaimed jurisdiction over the probate of wills and have refused to cancel or set aside such probate, though assailed on the ground that the wills in question were forgeries, and their admission to probate had been procured by fraud and perjury: Watson v. Bothwell, 11 Ala. 650; Ewell v. Tidwell, 20 Ark. 136; State v. McGlynn, 20 Cal. 233, 81 Am. Dec. 118; Langdon v. Blackburn, 109 Cal. 19, 41 Pac. 814; Sharp v. Sharp, 213 Ill. 332, 72 N. E. 1058; Hughey v. Sidwell's Heirs, 18 B. Mon. 259; Lyne v. Marcus, 1 Mo. 410, 13 Am. Dec. 509; Graland v. Smith, 127 Mo. 583, 28 S. W. 195, 29 S. W. 836; Loosemore v. Smith, 12 Neb. 343, 11 N. W. 493; Post v. Mason, 91 N. Y. 539, 43 Am. Rep. 689; McDowall v. Peyton, 2 Desaus. 313; Archer v. Meadows, 33 Wis. 166; Traver v. Traver, 9 Pet. 174, 9 L. Ed. 91; Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006; In re Broderick's Will, 21 Wall. 504, 22 L. Ed. 599; Allen v. McPherson, 1 H. L. Cas. 191; Kerrick v. Bransby, 1 Brown P. C. 588; and the same rule has been applied to grants of letters of administration: Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054.

Such proceedings as will contests cannot be inaugurated in courts of equity; the jurisdiction of probate courts is exclusive in such

matters: Curtis v. Schell, 129 Cal. 208, 79 Am. St. Rep. 107, 61 Pac. 951; Langdon v. Blackburn, 109 Cal. 19, 41 Pac. 814; Sohler v. Sohler, 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282; Froebrich v. Lane, 45 Or. 13, 106 Am. St. Rep. 634, 76 Pac. 351; Benson v. Anderson, 10 Utah, 135, 37 Pac. 256; Carrau v. O'Calligan, 125 Fed. 657, 60 C. C. A. 347.

There is doubtless much in the opinions in these cases from which the inference might be supported that, under no circumstances, can any relief be had in equity from an order admitting a will to probate. It must be remembered, however, that every ground upon which relief in equity might be urged is also available in the probate court in opposition to the probate of a will, and that in most, if not all, of the states a considerable period of time is allowed after such probate in which applications for its revocation may be made. In nearly, if not in all, of the cases cited, the persons seeking relief were guilty of laches in long delaying their application for such relief, or in failing without adequate excuse in the court having jurisdiction of the probate of the will to take advantage of the remedies there available to them. Hence, we think none of these cases warrants the broad proposition that in no event can relief in equity be obtained against the probate of a will. Of course, it may be conceded that, unless specially authorized by statutes, a court of equity cannot directly cancel or set aside such probate. This, however, is by no means conclusive of the question. It was, and perhaps still is, the rule that a court of equity could not and would not attempt to set aside a judgment at law. This, however did not prevent it from granting effective relief in personam. Relief of this character would, doubtless, in many instances practically annul the probate of a will, or, at least, prevent its inequitable operation. The right to proceed in equity against the probate of wills has been given by various American statutes which we shall not here undertake to summarize: Sharp v. Sharo, 213 Ill. 332, 72 N. E. 1058; Bartlett v. Manor, 146 Ind. 621, 45 N. E. 1060; Pryer v. Howe, 40 Hun, 383; Ocobock v. Eells, 37 N. Y. App. Div. 114, 55 N. Y. Supp. 1118; Dillard v. Dillard, 78 Va. 208; Couch v. Eastham, 27 W. Va. 796, 55 Am. Rep. 346. Where, upon the trial of an issue devisavit vel non, a will was set aside, it was held that relief might be granted in equity and the probate of a will reinstated upon proof of fraudulent combinations between the proponents and the contestants: Smith v. Harrison, 2 Heisk. 230.

The question remains whether, though the probate of a will cannot be set aside in equity, some other adequate relief may not be there obtained, as by declaring the party receiving the benefit of the will to be a trustee holding in trust for those who have been defrauded by its probate. That this may be accomplished has been intimated in certain English and American cases: Barnesly v. Powell, 1 Ves. Sr. 284; Sohler v. Sohler, 135 Cal. 323, 87 Am. St. Rep. 98,

67 Pac. 282; and necessarily determined in Smith v. Boyd, 127 Mich. 417, 86 N. W. 953. The bill in this case was to set aside certain codicils to a will on the ground of fraud, and for an accounting. A demurrer to the complaint was overruled, and the defendants appealed. The bill stated that the complainant was a grandchild of W. M., deceased, and that the defendants were his children and grandchildren, and they, with the complainant, constituted his heirs at law; that complainant's mother died when he was about eight months old, and that at the age of seven he went to live with his grandfather, with whom he remained until the death of the latter; that the grandfather, when complainant was five years of age, made a will, and that several years later, and when the grandfather was in feeble health and of unsound mind, he was, by undue influence, fraud, and deceit, induced to change his will to the prejudice of the complainant; that in July, 1889, the grandfather died, and the will and codicils were admitted to probate on the petition of one of the defendants; that the complainant had no general guardian; that his father was absent from the state; that no guardian ad litem was appointed, and that complainant had no knowledge of the proceedings in the probate court. The defendants, in support of their demurrer, insisted that the proceeding in the probate court was substantially in rem, and that the remedy was by appeal. The supreme court affirmed the judgment overruling the demurrer to the bill apparently on the ground that the complainant was without any remedy in the probate court, and that his case was to be treated substantially as if it were one to set aside the settlement of an account in the probate court when obtained by fraud. So far as the opinion of the court shows, there was no consideration by it of the English and American authorities with which its conclusions seemed to conflict.

The Limitations upon the Right to Obtain Relief in Equity from orders and decrees of probate courts and other tribunals exercising a like jurisdiction is the same as when relief is sought from judgments at law. Equity will not assert a mere revisory jurisdiction by attempting to correct or relieve from mere errors or irregularities, there being otherwise no sufficient ground for the interposition of equity: Seals v. Weldon, 121 Ala. 319, 25 South. 1021; Greely Burnham G. Co. v. Graves, 43 Ark. 171; Daly v. Pennie, 86 Cal. 552, 21 Am. St. Rep. 61, 25 Pac. 67; Ratliff v. Magee, 165 Mo. 461, 65 S. W. 713; Froebrich v. Lane, 45 Or. 13, 106 Am. St. Rep. 634, 76 Pac. 351; Gee v. Humphries, 28 S. C. 606, 5 S. E. 615; Central Nat. Bank v. Fitzgerald, 94 Fed. 16. Nor will it act where the complainant still has an adequate remedy in the courts having jurisdiction of the estate: Hankins v. Layne, 48 Ark. 544, 3 S. W. 821; Ladd v. Nystol, 63 Kan. 23, 64 Pac. 985; nor where he has been guilty of laches, either in not presenting his claims and not pursuing his remedy in that court, or in not seeking his remedy in equity within a

reasonable time after having notice of his rights and of the wrongs of which he complains. In other words, he must always aver and prove facts which excuse his not appearing and protecting his interests in the court of probate: Moore v. Lesueur, 33 Ala. 237; Lyne's Admr. v. Wann, 72 Ala. 43; Boswell v. Townsend, 57 Ala. 308; Tynan v. Kerns, 119 Cal. 447, 51 Pac. 693; Froebrich v. Lane, 45 Or. 15, 106 Am. St. Rep. 634, 76 Pac. 351; and where sufficient cause exists for resorting to equity, he must proceed with reasonable diligence; otherwise relief will be denied him because of his laches: Hankins v. Layne, 48 Ark. 544, 3 S. W. 821; Tucker v. Stewart (Iowa), 86 N. W. 371; Duryea v. Granger's Estate, 66 Mich. 593, 33 N. W. 730; Williams v. Petticrew, 62 Mo. 460; Slaughter v. Cannon, 94 N. C. 189; Handley v. Snodgrass, 9 Leigh, 484; Hays v. Freshwater, 47 W. Va. 217, 34 S. E. 831; Eames v. Manly, 54 C. C. A. 561, 117 Fed. 387. Furthermore, if fraud is relied upon, it must be extrinsic or collateral to the questions examined and determined in the adjudication complained of: Gruwell v. Seyboldt, 82 Cal. 10, 22 Pac. 938; In re Griffith, 84 Cal. 107, 23 Pac. 528, 24 Pac. 381; Hanley v. Hanley, 114 Cal. 690, 46 Pac. 736; Mulcahey v. Dow, 131 Cal. 73, 63 Pac. 158; Sohler v. Sohler, 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282. The strict application of this rule must prevent the award of all relief in equity, for such relief is never granted, unless the adjudication complained of is unjust, and the only method by which its unjustness can be established is by re-examination of the issues involved. Thus, where an executor or administrator presents and obtains an allowance of his accounts, and relief in equity is sought therefrom, it must always be alleged and proved that the account as presented and allowed is unjust, as well as that there was some fraud, accident, or mistake to which the allowance was due, and yet all the cases cited in the second paragraph of this note show that, in a proper case, relief may be obtained, though it must necessarily involve a re-examination of the question. The same may truly be said where relief is sought and obtained from a decree of distribution or an order directing the sale of property of a minor or decedent.

In no part of the proceedings in probate is there more temptation to fraud or more opportunity to successfully employ it than in proceedings to set aside to the widow property to which she claims to be entitled, either because it was a homestead of the decedent selected by him in his lifetime, or ought to be selected as her homestead, because he had never made any selection. There are several cases denying relief from orders setting aside a homestead on the ground that the fraud complained of was not extrinsic, and that the court hence could not proceed without the re-examination of issues already tried and determined: Fealey v. Fealey, 104 Cal. 355, 43 Am. St. Rep. 111, 38 Pac. 49; Wickersham v. Comerford, 104 Cal. 494, 38 Pac. 101; Hanley v. Hanley, 114 Cal. 690, 46 Pac. 736. The case last cited is an extreme one, and, if carried to its logical

result, should prevent relief being granted in nearly, if not in all, cases where fraud is practiced in probate proceedings. The action was brought to set aside a decree in the administration of the estate of Patrick Hanley, deceased, by which certain property was set aside to his widow as a homestead; and the complaint, among other things, alleged that the premises were the separate property of the deceased, that his widow willfully, falsely, and fraudulently represented to the court, and testified, that they were community property; and also falsely represented to it that a certain declaration of homestead had been filed on the premises while she and her deceased husband were actually residing thereon; and it was further contended that the complainants had no notice of the proceeding to set aside the homestead. A demurrer to the complaint was sustained, on the ground that the proceeding, being in rem, all parties interested were bound by it without personal notice, and that the fraud alleged was not extrinsic or collateral to the matter which was tried and determined by the court. As the question was presented upon demurrer, there was no suggestion that the widow testified as she did through any mistake; on the contrary, the demurrer necessarily admitted that she acted willfully, fraudulently, and falsely. Proceedings of this character are ordinarily ex parte, and we do not think that the rule to which we refer should be applied to them where such is the case. As those who are adversely interested are not present in court and usually have no actual knowledge of the proceeding, it ought to be regarded as a fraud, entitling them to relief when one, taking advantage of their absence, willfully misrepresents facts to the court, though the facts so represented involve the merits and go to the very foundation of the proceedings. The case of Sohler v. Sohler, 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282, though it does not profess to overrule any of the decisions referred to, seems to be necessarily in conflict with them, unless it can be said that the principles applicable to decrees of distribution differ from those applicable to orders setting apart homesteads. In the case last cited relief was obtained from a decree of distribution, on the ground that a widow conspired with her son, who was not the son of the decedent, to procure for him a share of the latter's property as one of his children, filed a petition naming him as such, and obtained a decree in accordance therewith. The court proceeded, however, partly upon the ground that the widow, being the executrix of the decedent, was the trustee of all the heirs and of other parties in interest, was the mother and natural guardian of such heirs, and was obligated to protect their legal rights and see that the legal claims to the estate were properly presented to the probate court.